14407

AIKEN MORTGAGE & REALTY CO. v. ALTMAN *ET AL.*

(189 S. E., 217)

*Messrs. Henderson & Salley* and *Thos. M. Boulware,* for appellant,

Messrs. *Edgar A. Brown* and *J. U. Watts, Jr.,* for respondents,

January 5, 1937.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The following facts are conceded or undisputed: On August 3, 1912, the defendant, W. M. Altman, gave to the Bank of Western Carolina a mortgage of real estate, the lien created thereby maturing on August 3, 1913. This mortgage was executed by Altman to secure a bond made by him at the same time, and under the terms of which he promised to pay to the bank $1,019.48, with interest, one year from date thereof. It appears from the record that several notes representing the debt were later given by the mortgagor, the last of these being dated August 20, 1931. On this note there was due on January 16, 1933, the sum of $628.50.

On August 31, 1934, the plaintiff, to whom the receiver of the Bank of Western Carolina had assigned the mortgage, brought this action for foreclosure. It was alleged, among other things, that during the year 1933, and prior to the expiration of the 20-year period, demand was made by the receiver of the bank for the payment of the debt, and that Altman told him he was getting a loan for the purpose of taking up the mortgage, and by this inducement extension of time was procured beyond August 3, 1933; and that, because of such representations, the receiver also, on December 4, 1933, paid to the town of Blackville, as back taxes on the property for 5 years, $74.54.

The defendants other than Altman were made parties to the suit on account of all or some of them having a claim upon the premises in question. It appears that a second mortgage was given on the property, dated December 24, 1920, in favor of Mutual Trading Company of Blackville, which was assigned to, and is now owned by, the defendant John O'Gorman.

By their answers, both Altman and O'Gorman interposed a general denial; and alleged, as a second defense, that under the provisions of section 8864 of the Code of 1932 "the mortgage referred to in plaintiff's complaint ceased to constitute a lien upon the real estate therein described on the 3rd day of August, 1933, and before the commencement of this action." O'Gorman also asked for affirmative relief by foreclosure of the mortgage held by him. The plaintiff demurred to the second defense contained in the answers of these defendants upon the ground that facts sufficient to constitute a defense were not stated.

The case was referred to the master of Barnwell County, who found and concluded that Altman was estopped, because of his representations to the receiver, that "he was making every effort to borrow the money to pay this indebtedness * * * and thereby induced the said receiver to withhold foreclosure," from pleading the provisions of Section 8864 of the Code as a defense. He also sustained plaintiff's demurrer to the second defense contained in the answer of O'Gorman, holding that the plea did "not contain the facts upon which the issue between the parties is made up but is simply a conclusion of law"; and further concluded that, even if the answer of this defendant was a sufficient plea of the statute, he, as a junior mortgagee, could not invoke its provisions under the law. He recommended that plaintiff's mortgage be foreclosed as a first lien upon the property and that of O'Gorman's as a second lien.

The defendant Altman excepted to all of the master's findings of fact and conclusions of law, except as to the

amount of the debt found due and owing by him to the plaintiff. The defendant O'Gorman also excepted to the report on the ground that the master erred in sustaining plaintiff's demurrer and in holding that the statute set up by this defendant could be of no avail to him. The matter was heard by his honor, Judge Green, who overruled the report in the particulars objected to, by an order dated January 11, 1936, from which we quote:

"After a careful consideration of the matter, I find and hold that the master erred in finding and holding that the defendant, W. M. Altman, was estopped from setting up as a defense the provisions of section 8864 of the Code of Laws of this State 1932, and from claiming protection thereunder. Under said statute the lien of plaintiff's mortgage ceased to exist more than a year prior to the commencement of this action. Conceding that the principle of estoppel will apply in cases of this kind, the evidence utterly fails to show that the acts and conduct of Atlman were such as would constitute an estoppel. For some time prior to the expiration of the lien of plaintiff's mortgage Altman stated that he was endeavoring to secure another loan to take up plaintiff's debt, but there is abosolutely nothing that would challenge his honesty of purpose or go to show that he misled or attempted to mislead the original mortgagee or its receiver, who was the owner and holder of the mortgage until it was assigned to plaintiff in 1934. The same is true as to his dealings with plaintiff. Furthermore, the original mortgagee or its assignee was the owner and in possession of the bond and mortgage, knew the date of maturity of the mortgage as well or better than Altman, was charged with knowledge of the provisions of the Statute under consideration and the simple way by which the lien of the mortgage could be extended, and was negligent in that it failed to exercise due diligence to protect its own interests. Plaintiff is not in a position, therefore, to invoke the principle of estoppel in this case.

"I find and hold that the master was in error in sustaining the demurrer to the second defense of the answer of the defendant, John O'Gorman, and in holding that he as a junior mortgagee could not invoke the provisions of the statute in question. The allegations of said defense were sufficient to apprise plaintiff that said defendant was relying upon the provisions of section 8864 of the Code; and it is generally held that a junior mortgagee may invoke protection afforded by such a statute. Sec. 41 C. J., 874. However, the entire controversy between plaintiff and the defendant, John O'Gorman, passes out of the picture, so to speak, when it is held, as I am doing here, that the defendant, W. M. Altman, has successfully invoked said statute.

"From the foregoing it follows that the master was in error in finding and holding that plaintiff's mortgage constituted a first lien, or any lien whatsoever, upon the real estate described in the complaint and that it was entitled to a foreclosure thereof."

Counsel for the appellant, plaintiff below, raise by their exceptions the following questions: (1) Does the lien of a mortgage of real estate continue of force after the lapse of 20 years without the holder of such mortgage complying with the requirements of section 8864 of the Code of 1932, where no interest of an innocent third party, such as a purchaser for value, is involved? (2) Is the respondent, W. M. Altman, estopped by his acts from setting up the provisions of this statute as a defense?

The section above referred to is as follows: "No mortgage, or deed having the effect of a mortgage, no judgment. decree or other lien on real estate, shall constitute a lien upon any real estate after the lapse of twenty years from the date of the maturity of the same: *Provided,* That if the holder of any such lien or liens, as aforesaid, shall, at any time during the continuance of such lien, cause to be recorded upon the record of such mortgage, or deed having the effect of a mortgage, or shall file with the record of such judgment,

decree or other lien, a note of some payment on account, or some written acknowledgment of the debt secured thereby, with the date of such payment or acknowledgment, such mortgage, deed having the effect of a mortgage, judgment, decree or other lien, shall be, and continue to be, a lien for twenty years from the date of the record of any such payment on account or acknowledgment: *Provided, further,* That nothing herein contained shall be construed to affect the duration of the liens of judgments as prescribed by the Code of Procedure: *Provided, further,* That on and after the first day of January, 1902, the provisions of this section shall apply to all mortgages, those executed prior to the 24th day of December, 1879, as well as to those executed since that date: *Provided, further,* That where there is no maturity stated or fixed in the mortgage or the record of same, then the provisions hereof shall be applicable from the date of such mortgage and such mortgage shall not constitute a lien after the lapse of twenty years from the date thereof."

The appellant, while conceding that the act in question "does seem positively to state that no mortgage will be good after twenty years from its maturity, unless a notation of a payment or a written acknowledgment of the debt has been duly recorded," contends that certain decisions of this court are to the effect that this statute is to be taken merely as a rule of evidence and "is not to be construed (unless the interest of innocent third parties whose rights come into existence after twenty years have elapsed, come into play) as ending the life of the mortgage." Counsel cite the following cases, which they argue support their position, relying mainly upon *Ewbank v. Ewbank,* 64 S. C., 434, 42 S. E., 194; *Lyles, v.* the *Lyles case: Henry v. Henry,* 31 S. C., 1, 9 S. E., 726, 727; *Lyles,* 71 S. C., 391, 51 S. E., 113, 115; *McSween v. Windham,* 104 S. C., 508, 89 S. E., 500.

The facts of the *Henry case* were as follows: On February 27, 1867, Samuel G. Henry confessed judgment to John P. Henry, and execution was issued thereon immediately there-

after. The matter was allowed to stand that way, however, until October 17, 1887, 20 years and 7 months after the confession was entered, when proceedings were instituted to renewed, and under another issued on a judgment held by fendant, who made an affidavit to the effect that the debt was founded upon a bona fide and valuable consideration and that the judgment was unpaid. Shortly thereafter the real estate of the defendant was levied upon and sold by the sheriff under an execution issued on the judgment ordered rnewed, and under another issued on a judgment held by one Watkins against the defendant, junior to that of the plaintiff. One Hornsby and others also held an execution in the hands of the sheriff next in order of priority to that claimed by the plaintiff, and who demanded that the proceeds of the sale be paid to them. The sheriff, however, refused to comply with this demand pending a decision of the question by the Court as to the rights of the parties. Hornsby contended that the renewal of the execution of the plaintiff on October 17, 1887,, was void; that the judgment had lost its lien on the real estate of the debtor under the act of 1879 (now section 8864 of the Code), by reason of the fact that the plaintiff had failed to comply with the provisions of that statute. The Circuit Judge took that view of the matter, and from his decree an appeal was taken to the Supreme Court.

The questions presented by the appeal were whether the act of 1879 had a retroactive effect, and, if so, would its operation be to divest vested rights if held valid? Under the issues involved, the constitutionality of the statute was sought to be saved by the construction given it. Mr. Justice Mc-Iver, who wrote the opinion, affirmed the judgment below, holding that the manifest purpose of the act in question "was to declare the limit, and not to extend the duration of the lien of judgments." With regard to what the law was with reference to mortgages before the enactment of the statute and the effect of the act, the Court said:

"Under the old law, neither a judgment nor a mortgage, after the lapse of 20 years, constituted a lien, because of the presumption of payment, which, though susceptible of being rebutted by evidence, the nature and kind of such evidence was not distinctly defined, and the object and effect of the act was to declare what should be, after the passage of the act, the kind of evidence necessary to rebut the presumption of payment. The act, in substance, delares that no judgment or mortgage shall constitute a lien after the lapse of 20 years, unless some note of payment on account, or some written acknowledgment of the debt, is recorded on the record of the mortgage, or filed with the record of the judgment; the only alteration being in the rules of evidence, not in any wise affecting the previously existing right.

"It seems to me that this is the proper construction of the act; and, at all events, it is capable of such a construction, and, if so, then, with the view to avoid a conflict with the constitution, it is the duty of the Court to adopt such construction. All the authorities agree that the right to have one's controversies determined by the rules of evidence existing at the time the contract is entered into is not a vested right, and therefore may be changed by retroactive legislation, without any violation of the constitution."

In the *Henry* case the action was between the original parties, the debtor admitting that the judgment was a bona fide one and unpaid. The plaintiff, however, having failed to comply with the provisions of the statute, the Court held that the judgment no longer constituted a lien upon the real estate of the debtor. It seems clear that this decision is not authority for the contentions of the appellant in the case at bar.

The *Ewbank case* was an action for partition of real estate, in which a controversy arose involving the 6-year statute of limitations. This statute was interposed by one of the defendants, Herbert Ewbank, as a bar to the claim of another defendant, Arthur Ewbank, who sought to have Herbert's

interest in the premises applied to a debt, evidenced by a note, due him by Herbert. The note was secured by an instrument conceded to be an equitable mortgage of Herbert's interest in the premises; was dated February 6, 1880, payable February 6, 1882, and was credited with a payment of $400 on May 13, 1892. It appears that Herbert admitted, because of the $400 payment, that the note was not barred by the statute, but contended that the equitable mortgage given to secure its payment was barred. The master, to whome the case was referred, reported against this contention. The Circuit Judge, however, took a different view and reversed the master's findings. On appeal, this court held, as is correctly stated in the syllabus of the case, that "payment on note secured by equitable mortgage, after it is barred, renews the note and revives the equitable mortgage as between the original parties."

From a careful study of the opinion, we are satisfied that this decision has no application to the case at bar. It is not made to appear that the action was commenced more than 20 years after the execution of the equitable mortgage which was there the subject of consideration. The effect, therefore, of what is now section 8864 of the Code of 1932, was not argued by counsel or considered by the Court in its opinion.

The action to foreclose the mortgage of real estate involved in the *Lyles case* was commenced on November 25, 1901. The mortgage was executed on February 19, 1881, and was given to secure a bond due and payable on December 1, 1881. The defendant in the case, while admitting that the plaintiffs were entitled to judgment against him for the amount due on the bond, denied that the mortgage was a valid and subsisting lien upon the real estate mentioned therein, for the reason, as he contended, that under the act of 1879, as it appeared as section 2449 of the Code of 1902, the lien of the mortgage ceased to exist after February 19,

1901, there having been no compliance by the plaintiff with the provisions of the act as to keeping the lien alive.

The Circuit Judge held that, although the act provided that a mortgage would not constitute a lien upon any real estate after the lapse of 20 years "from the date of the creation of the same," the statute would not begin to run from the execution of the mortgage but from the breach of the condition of the bond; and that, as the bond became due and payable on December 1, 1881, less than 20 years after its due date, the lien of the mortgage was not barred at the commencement of the action. On appeal, the circuit decree was affirmed by a divided Court. Mr. Chief Justice Pope thought, and so stated in his opinion favoring affirmance, that the decision in the case of *Ewbank v. Ewbank, supra,* was conclusive of the matter. Mr. Justice Gary concurred in the opinion of the Chief Justice, citing *Henry v. Henry, supra,* as supporting the first proposition on which he based his concurrence, and *Brown v. McCall,* 3 Hill, 335, in support of the second proposition, "that the presumption of payment does not arise until there is a right of action on the debt secured by the mortgage." Mr. Justice Woods wrote a dissenting opinion, in which, with the *Henry case* in mind, he expressed the view that the act in question did not change the statute of limitations prescribed by section 111 of the Code of Civil Procedure 1902 as to the debt represented by a mortgage, but only as to the lien securing such debt. Also that *Ewbank v. Ewbank,* upon which the Chief Justice relied, had no application to the case then under consideration. Mr. Justice Jones, who wrote the opinion in the *Ewbank case,* concurred in the dissenting opinion of Mr. Justice Woods.

Counsel for the appellant here argue that the effect of the decision in the *Lyles case,* referred to as "the principal one of these decisions," is that the statute in question "does not enure to the benefit of the original mortgagor," but only "to the benefit of innocent third parties alone." The only question submitted to and decided by the circuit judge, as

we have pointed out, was whether the statute began to run from the execution of the mortgage or from the breach of the condition of the bond; and it was from his holding that it ran from the breach of the bond, despite the fact that the law as it then read provided that no mortgage should constitute a lien upon any real estate after the lapse of 20 years "from the date of the creation of the same," that the appeal was taken. As it appears that this Court rested its decision mainly on the *Henry* and *Ewbank cases,* what we have already said with reference thereto applies here. Furthermore, even if it should be conceded that the Court said some things in its opinion that might seem to support the appellant's contention, still we do not think, when all that might properly have been stated, in relation to the question there involved, is considered, that it may soundly be held that the case at bar, or the issue here presented, is at all concluded by that decision.

The *McSween case,* decided in 1916, was the last decision of this Court in which the act of 1867, then appearing as Section 3535 of the Code of 1912, was construed. The report of the case shows the following pertinent facts: The action was commenced by plaintiff on October 30, 1905, to foreclose a "mortgage given to secure a promissory sealed note of one Reuben J. Windham," bearing date June 5, 1886, and maturing November 1, 1886. On December 16, 1905, the complaint was amended "for the purpose of foreclosing a mortgage given to secure a promissory sealed note" of R. J. Windham, bearing date November 7, 1884, and maturing November 1, 1885. The tract of land covered by these mortgages was conveyed to Windham by Mary J. Windham, by deed, on March 25, 1881, and title thereto was in him at the date of his death. On January 11, 1887, Windham gave to McSween an acknowledgment in writing of the mortgage debts, which was recorded in the office of the Clerk of Court for Darlington County on December 9, 1905. The mortgagor died on October 5, 1894, leaving certain heirs at law who were made parties to the action. In 1900 Elizabeth Jordan

conveyed to one D. C. Watford her interest in the real estate. By their answer, the defendants denied that the land in question was subject to the liens of the mortgages sought to be foreclosed, and pleaded, in addition to other defenses, the statute of limitations. The case was referred to Hon. Thos. H. Spain, master, who stated in his report that "the issues between the parties are practically these: (1) What estate was conveyed to R. J. Windham by the deed of the said Mary Windham? (2) Are the mortgage debts barred by the statute of limitaions? (3) Are the mortgage debts paid?

We are concerned in the case at bar with the Court's decision only as to the second question. With reference to that issue, the master held, as to the junior mortgage, the one given to secure the note maturing November 1, 1886, that "neither note nor mortgage is barred, and, as the mortgage was duly recorded, all the defendants were charged with notice of its being a lien on the land." As to the senior mortgage, the one given to secure the note maturing November 1, 1885, the Master, after quoting the pertinent provisions of the act in question, concluded and held as a matter of law, citing the *Lyles case* as authority for the holding that the lien of the mortgage was barred:

"Prior to the enactment of said statute, the lien of a mortgage existed as long as the debt remained unpaid. Hill on mortgages says, 'The lien lasts as long as the debt,' quoted with approval in *Nichols v. Briggs,* 18 S. C. [473], 484. Since the enactment of the statute, parties can preserve the mortgage lien only by complying with the terms of the statute, and as the written acknowledgment was not recorded until one month and nine days after the expiration of 20 years, commencing from the maturity of the said mortgage debt, I hold that the lien of the mortgage is barred. *Lyles v. Lyles,* 71 S. C., 391, 51 S. E., 113. As to the note secured by the said mortgage, the note being a 'contract in writing, secured by a mortgage of real property,' it took 20 years ·from the date of its maturity to bar it. Section 111, Vol. 2, of the

Code. As the mortgagee acknowledged the existence of the debt on the 11th day of January, 1887, new life was infused into the note, and it took 20 years from then to bar it. I hold that the said promissory note is not barred. In *Nichols v. Briggs, supra,* the note was barred, but not the mortgage. Here the mortgage is barred, but not the note."

The Circuit Judge confirmed the Master's report and gave judgment for the defendants. On appeal from his order, this Court, in an opinion written by Mr. Chief Justice Gary, disposed of the second question above stated in the following language: "He [the Master] also reported that neither the note nor the mortgage, executed on the 5th of January, 1886, nor the note bearing date the 7th of November, 1884, was barred by the statute of limitations. But he also held that the lien of the mortgage, dated the 7th of November, 1884, was discharged by reason of the plaintiff's failure to comply with the requirements of Section 3535 of the Code of Laws of 1912. His rulings in these respects were properly sustained by his Honor the Circuit Judge, for the reasons stated in the report."

Counsel for the appellant, in an effort to differentiate the *McSween case* from the one at bar, make the following contentions: (a) That the vital question presented by the present appeal was not raised or passed upon in the *McSween case;* (b) that the action in that case was brought within the 20-year period; and (c) that the interest of an innocent third party (Watford) was there involved, which influenced the Court's decision.

We are not in agreement with these contentions. As to (a), the contest was between the mortgagee and the heirs at law of the mortgagor; the issue was squarely made that the lien of the mortgage was barred, for the reason that the provisions of the statute in question had not been complied with. We think, therefore, that question (1) in the case before us was there fairly presented and decided. As to (b), it appears from the admitted facts that foreclosure of the senior mort-

gage, the one in question, was begun, by amendment of the complaint, on December 16, 1905. This was 20 years, 1 month, and 15 days after the maturity of the note it was given to secure; and, as found by the Master, 20 years, 1 month, and 9 days after the written acknowledgment of the debt by the mortgagor had been recorded, counting from the maturity of the note, November 1, 1885. As to (c), it was conceded that Watford purchased and was the owner of the interest of one of the heirs in the land. It is true, therefore, that the Court rendered its decision with that fact before it. Clearly, however, it did not regard such fact, as it made no reference to it, as affecting in any way the construction given the statute.

Upon full consideration, we think that the *McSween case*, unquestionably, was correctly decided, and that it is ample authority, as we have indicated, for the conclusion reached by the Circuit Judge in the case at bar. Aside from that decision, however, Judge Greene gave to the act, under the issues involved, the effect that it was clearly intended to have, and we approve his holdings with reference thereto. The appellant's contention, therefore, as to the first question presented by the appeal, is found to be without merit.

For the reasons stated by the Circuit Judge, which we quote above, the second question must also be answered in the negative. This makes it unnecessary to decide whether estoppel will apply in cases of this kind, and on that point the Court reserves its decision.

The judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE, and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.